**Continuation of Application for Search Warrant**

Based on my knowledge, training and experience, and the investigation of law enforcement officers with personal knowledge and with whom I am working, I, Alexis J. Giudice, being duly sworn, depose and state as follows:

**INTRODUCTION**

1. Based on the information set forth below, there is probable cause to believe that evidence of violations of federal law, specifically, Title 21, United States Code, Sections 841(a)(1) and 846, possession with intent to distribute controlled substances, and drug trafficking conspiracy, will be found on certain electronic devices, specifically, a black Nokia cell phone and a light blue IPhone (hereinafter the "**Subject Devices**," described more fully in Attachment A). The categories of electronically stored information and evidence sought are described in Attachment B.

2. This Application requests the issuance of a warrant to examine the **Subject Devices** which were seized on February 7, 2023, following a traffic stop of a vehicle containing Eugene Kassale HERRON XX/XX/1982 (a/k/a "Geno"), which resulted in the seizure of the **Subject Devices** and approximately 469.2 grams (with packaging) of methamphetamine and 122.2 grams (with packaging) of cocaine.

**APPLICANT'S TRAINING AND EXPERIENCE**

3. I am a Special Agent with the Drug Enforcement Administration ("DEA"), a position I have held since approximately August 2015. As part of my duties, I investigate criminal violations of the federal drug trafficking laws. I have

been involved with various electronic surveillance methods, the debriefing of defendants, informants, and witnesses, as well as others who have knowledge of the distribution, transportation, storage, and importation of controlled substances.  I have received training in the areas of drug investigations, money laundering, financial investigations, and various methods which drug dealers use in an effort to conceal and launder the proceeds of their illicit drug trafficking enterprises.  I have participated in investigations that have led to the issuance of search warrants involving violations of drug laws.  These warrants involved the search of locations including: residences of targets, their associates, and relatives; storage facilities; smartphones; and computers.  Evidence searched for, and recovered, in these locations has included controlled substances, records pertaining to the expenditures and profits realized therefrom, monetary instruments, and various assets that were purchased with the proceeds of the drug trafficking.

4. I also know from training and experience that drug traffickers frequently utilize mobile telephones and other electronic devices, such as tablets and laptop and desktop computers, to facilitate drug trafficking.  Mobile telephones are portable, and some mobile telecommunications service providers do not require purchasers of the devices to provide their names and/or addresses, so narcotics traffickers often use the devices in an effort to avoid detection by law enforcement. Mobile phones often contain evidence indicative of drug trafficking, including records of incoming and outgoing calls and text messages with suppliers of narcotics; voicemail messages; photographs of drugs, coconspirators, or currency; and, in the

case of "smart phones," Global Positioning System (GPS) data indicating the location of the device at given points in time, providing evidence that the device was in high drug trafficking areas or evidencing the route used in trafficking narcotics. Additionally, drug traffickers typically maintain and use multiple mobile phones to facilitate sales, and frequently switch phones to evade detection by law enforcement. Further, these types of devices are frequently used to access social media websites such as Facebook, Instagram, etc.  In my training and experience, drug traffickers are using social media with increasing frequency to communicate with suppliers and purchasers of narcotics.

5. Similarly, I also know from training and experience that drug traffickers use tablets, laptop and desktop computers to further their activities by, for example, producing and maintaining drug ledgers and other financial records, photos/videos of drug trafficking and/or associates, and other related digital files.  Storing this information can be intentional by the user, such as saving an e-mail as a file on the computer or tablet or saving the location of one's favorite websites in "bookmarked" files.  Digital information can also be retained unintentionally without the user's specific knowledge.  This might include traces of the path of an electronic communication being automatically stored in many places, such as temporary files or Internet service provider (ISP) client software, or files that were previously viewed or deleted being retained in "free disk" space.  In addition to electronic communications, a computer or tablets user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used.  A forensic

examiner often can recover evidence suggesting whether a computer contains certain file sharing software, when the computer was sharing files, and some of the files which were uploaded or downloaded. Such information is often maintained indefinitely until overwritten by other data.

6. I also know from training and experience that drug traffickers utilize cameras and video cameras to take photos/video of narcotics, currency, high value items and coconspirators.

## PROBABLE CAUSE

7. This continuation is based on an investigation by the Grand Rapids Police Department ("GRPD") and the Drug Enforcement Administration ("DEA").

8. Beginning in or about April 2022, GRPD and DEA began surveillance of Lamon SIMMONS for suspected drug trafficking. At the time, SIMMONS was on federal supervised release from a previous conviction in this District for possession with intent to distribute more than 50 grams of a mixture or substance containing cocaine base (Case No. 1:04-cr-214).

9. During the course of the investigation, investigators identified vehicles and locations suspected to be associated with SIMMONS' narcotics trafficking. On December 8, 2022, investigators obtained State of Michigan search warrants for SIMMONS' 2022 Cadillac Escalade; SIMMONS' residence located at 799 Weatherwood Drive SE, in Kentwood, Michigan; and SIMMONS' suspected narcotics stash location at 301 Holly Street SW, in Wyoming, Michigan. The search warrants also authorized a search of vehicles associated with these two addresses.

10. On December 8, 2022, investigators observed SIMMONS' white Cadillac Escalade driving in tandem with SIMMONS' girlfriend, Betty MARTINEZ' black Buick Enclave on highway 94 towards Grand Rapids, Michigan from a return trip from Chicago, Illinois. In anticipation of the search warrants, investigators conducted a traffic stop of SIMMONS' white Cadillac Escalade containing Chandra KEENAN as the driver and SIMMONS' as the passenger and placed SIMMONS' into custody for safety.

11. Investigators then followed MARTINEZ' vehicle to 301 Holly Street SW, and placed MARTINEZ into custody for safety pending the execution of the search warrants. Investigators searched the Buick Enclave and found a box wrapped in green color Christmas-style wrapping paper. Inside of the box were seven shrink-wrapped bricks. Each of the seven bricks weighed approximately one kilogram (with packaging) and field tested positive for cocaine[1]. Police also seized from inside of the Buick Enclave approximately $983 in U.S. currency and a wallet with MARTINEZ's driver's license.

12. On December 20, 2022, a federal grand jury indicted SIMMONS with one count of possession with intent to distribute fentanyl and cocaine and one count of possession with intent to distribute cocaine, aiding and abetting. (Case No. 22-cr-177). Betty Martinez was charged with one count of possession with intent to

---

[1] A lab analysis from the DEA North Central Laboratory further confirmed the substance was in fact cocaine.

distribute cocaine, aiding and abetting. SIMMONS was held in pretrial detention and MARTINEZ was released on bond.

    13.    During the course of the continued investigation, through physical surveillance and a phone toll analysis, investigators identified Eugene HERRON, as a suspected narcotics associate of SIMMONS. HERRON is currently on federal supervised release from a previous conviction in this District for Possession With Intent to Distribute 28 Grams or More of Cocaine Base (Case No. 1:12-cr-119-01). On September 19, 2018, HERRON admitted guilt to violating a term of his supervised release. The nature of the violation included New Criminal Conduct-Possession of Cocaine Base, and Use and Possession of Cocaine. HERRON was sentenced to 24 months' incarceration in the United States Bureau of Prisons (BOP) with 36 months' supervision to follow. (R:63, Judgment, PageID. 229-232.) HERRON was released from BOP is currently under the standard conditions of supervision.

    14.    Investigators conducted a phone toll analysis between SIMMONS' phone number of 616-666-5602[2] and HERRON's phone number of 773-828-7040[3],

---

[2] Phone number 616-666-5602 was identified as Lamon SIMMONS phone number in the following manner:

An administrative subpoena on AT&T revealed that phone number 616-666-5602 is subscribed to Lamon SIMMONS, with an address of 724 Lynch Street SW, Grand Rapids, Michigan. Investigators further ran phone number 616-666-6502 through police databases, which revealed the phone number to be associated with "Lamon SIMMONS, 799 Weatherwood Drive SE."

[3] The phone number 773-828-7040.was identified as Eugene HERRON's phone number in the following manner:

Investigators queried the phone number 773-828-7040.in law enforcement databases which revealed the Target Cell Phone to be associated with "Eugene

which revealed approximately 253 contacts between May 15, 2022, and December 1, 2022.

15. Following SIMMONS' indictment, arrest, and pretrial detention, investigators began monitoring SIMMONS' jail calls via the Newaygo County Jail in which SIMMONS has been conducting numerous recorded calls with HERRON, using the phone number 773-828-7040. During the calls, SIMMONS and HERRON appear to be speaking in code. Further, based on the on-going investigation, and my training and experience, I believe that due to SIMMONS' incarceration, HERRON is conducting narcotics related activity on SIMMONS' behalf.

16. For example, on January 22, 2023, SIMMONS had a phone call with HERRON:

| | | |
|---|---|---|
| SIMMONS: | | When are you going back up there? |
| HERRON: | | I'm going back up there Friday. |
| SIMMONS: | | What are you gonna' do, try and set up for Friday? |
| HERRON: | | I got something nice, I got a nice dub on me and all blues. |
| SIMMONS: | | You say what? |
| HERRON: | | I got a nice dub on me and all blues. |
| SIMMONS: | | A what? |
| HERRON: | | I got a dub on me and all blues. |

---

HERRON, 801 College Ave SE, Grand Rapids, Michigan." Investigators placed the phone number 773-828-7040 into the Newaygo County Jail phone call system which revealed recorded text messages from the phone number 773-828-7040 to an inmate. On May 22, 2022, the phone number 773-828-7040 sent a recorded text message that stated, "Wassup lil nigga this Geno you cooling in there let me know if you need anything lil bro."

SIMMONS:     Oh yeah? Okay, that's what I'm talking about.

HERRON:      Yup.

SIMMONS:     [unintelligible] I'm trying to take care of this other shit.

HERRON:      Yeah for sure. I got you though.

SIMMONS:     [unintelligible] a couple hundred, real quick man. You ain't got no Zelle?

HERRON:      Man you know I ain't been fucking with that shit after they kicked me off that mother fucking Cash App shit and I had to go open up a bank account to get all my money off that shit. I ain't been fucking with that shit, they make you do taxes on that shit.

SIMMONS:     You ain't got nobody that can send it? Or Western Union?

HERRON:      Yeah I can go to Western Union or I can tell her to hit one of our people up to see what they got on their shit. But that shit, I don't want to fuck with that electronic shit. Now I'm talking personally about myself but I have someone that's already fucking with.

SIMMONS:     Oh you can't run up to Western Union or Wal-Mart to Wal-Mart?

HERRON:      Yeah, yeah we can do that. Yeah we can definitely do that. We gonna' do it today.

SIMMONS:     Put it on…write this down.

HERRON:      Let me get a pen, you know what I'm gonna' put it in a text message.

*SIMMONS then provides a name for his cousin in San Antonio, Texas*

SIMMONS:     Wal-Mart to Wal-mart San Antonio, Texas. And then uh, write that number down so when you do it you call and tell them the reference number.

*SIMMONS then provides the phone number for his cousin in San Antonio, TX*

> SIMMONS: Text her and tell her it's done and I'm going to call you right back.
>
> HERRON: Alright.

17. Based on the on-going investigation, and my training and experience, I believe that in this phone call HERRON is advising SIMMONS he has obtained narcotics proceeds on behalf of SIMMONS. I am aware based on my undercover experience and training and experience that when HERRON stated, " I got something nice, I got a nice dub on me and all blues" that in this context I believe "Dub" refers to $20,000 and "all blue" refers to 100 hundred dollar bills. Further, based in the conversation when SIMMONS is instructing HERRON where to send the money following HERRON's statement, I believe that HERRON is acting on behalf of SIMMONS to facilitate drug trafficking and the movement of drug trafficking proceeds.

18. Based on the ongoing investigation by DEA, and the Grand Rapids Police Department, and the recorded phone calls described in this affidavit, I believe that HERRON is a narcotics associate of SIMMONS, and facilitating SIMMONS' narcotics related activity while SIMMONS is incarcerated.

19. On January 25, 2023, I swore out a search warrant for a cellular location ("ping") warrant on the phone number 773-828-7040 (Case No. 23-mj-36). On January 27, 2023, the pings became active. Since this date, investigators have been monitoring the cellular location information ("pings") from phone number 773-828-7040. In the approximately two weeks since investigators have been monitoring

these pings, they have shown HERRON'S phone to be consistently in the vicinity of the Town Place Inn and Suites located at 4850 Town Center Drive, SE, in Grand Rapids during the hours in which HERRON would be sleeping. HERRON is currently employed Great Lakes Coca-Cola located at 6909 Rapids Drive, Caledonia, Michigan on 3rd shift. According to U.S. Probation, HERRON'S residence is reported as 4561 Mobile Trail in Traverse City, Michigan.

20. On February 3, 2023, DEA/TFO and GRPD Officer Rick Hebden verbally swore out a State of Michigan search warrant to place a GPS tracker on HERRON's vehicle, Nissan Pathfinder bearing Michigan Plate: EBW-8049[4]. Investigators have been monitoring this tracker since February 3, 2023. The tracker information largely corroborated the ping location information.

21. On February 3, 2023, GPS tracker information and cell phone pings showed HERRON traveling from Grand Rapids to 1042 Oakdale Street SE in Grand Rapids, Michigan. Tracker information indicated that HERRON left his vehicle parked at 1042 Oakdale Street while cell phone ping data revealed that HERRON he traveled in an unknown vehicle to Traverse City, Michigan.

22. On February 7, 2023, investigators were conducting surveillance of the Town Place Inn and Suites. On this day, surveillance observed HERRON exit the front lobby of the hotel. They positively identified HERRON from his State of Michigan driver's license photograph. Cell phone ping data also placed HERRON in

---

[4] Task Force Officer Rick Hebden received the electronic copy of the signed search warrant on February 6, 2023. The time stamp on the electronic search warrant signature is February 6, 2023.

the vicinity of the hotel at this time.  Surveillance officers saw that HERRON was carrying a small bag.  They watched HERRON walked from the lobby, into the parking lot, and entered the front passenger seat of a Black Ford Pick-up truck bearing Michigan plate: DB-25268.  The driver of this vehicle was later identified as Carly Caporossi.

23.    Surveillance followed this vehicle as it traveled south on I-94 toward Benton Harbor. The car exited the interstate and traveled through the city of Benton Harbor, eventually stopping at an address on Union Avenue near May Street, Benton Harbor, Michigan. Surveillance officers observed the black Ford pick-up pull into the driveway. Surveillance officers then observed HERRON exit the front passenger seat of the black Ford pick-up truck and enter the front passenger seat of a white Nissan, bearing Florida plate: 2093AR that was already parked at the location. This vehicle is a Hertz rental vehicle. While HERRON was in the SUV, surveillance observed a white Hyundai Sonata bearing Michigan plate: EQE-0470 arrive and park in front of the residence. Surveillance then observed an unknown individual exit the driver's seat of the Sonata and approach the white Nissan that HERRON was currently in for approximately 10 minutes prior to returning to the Sonata and exiting the area.

24.    Approximately five minutes after the Sonata exited the location, surveillance observed HERRON exit the white Nissan and re-enter the passenger seat of the black Ford pick-up truck. HERRON'S vehicle then briefly stopped at Popeye's and Burger King on Napier Avenue before traveling on 1-94 north toward

Grand Rapids.  Surveillance officers continued to follow the black Ford pick-up truck as it traveled.

25.     Based on the on-going investigation, my training and experience, the physical surveillance, and HERRON's short duration in meeting unknown individuals in the drive way of a residence, I believe that HERRON was obtaining narcotics while in Benton Harbor, Michigan. I am aware that narcotics traffickers will often use rental cars as way to maintain anonymity, as the license plates go back to a rental company and not a particular individual.  Rental vehicles are also frequently exchanged for different vehicles, as a way to evade law enforcement detection.  The brevity of HERRON'S interaction with the unknown persons in the rental vehicle in conjunction with the distance traveled for the short meeting is also indicated of a narcotics transaction based on my training and experience.

26.     Surveillance continued with HERRON'S vehicle as it exited the interstate in Grand Rapids, Michigan.  Surveillance continued to follow the vehicle and observed it stopping at a clothing store, a liquor store, and an apartment complex all in the city of Grand Rapids.  At approximately 9:30 p.m., surveillance officers were following HERRON'S vehicle near the intersection of 28th Street and Kalamazoo in Grand Rapids.  Surveillance observed the black Ford Pick-up truck swerving between lanes and crossing the yellow barrier line on numerous occasions.  At this time, investigators requested the assistance of a marked police unit to conduct a traffic stop of the vehicle. The Michigan State Police responded and

executed a traffic stop for a moving violation near Kalamazoo Avenue and 28th Street.

27.   As law enforcement approached the car, MSP Troopers made contact with the driver, whom was then identified as HERRON, and the passenger, Carly Caporossi.  Officers also observed an open container of liquor within the reaching distance of the driver. Officers asked HERRON to step out of the car.  HERRON advised that the vehicle did not belong to him, but that the female passenger, Caporossi was the owner of the vehicle.  Officers placed HERRON into custody for transporting an open container of alcohol.

28.   During a search of the vehicle, officers located what field tested positive as 469.2 grams (with packing) of methamphetamine and what field tested positive as 122.2. grams (with packaging) of cocaine hidden inside of a Burger King bag located in the vicinity of the passenger area. Investigators further located two cell phones belonging and identified by HERRON as his phones (the **Subject Devices**), as well as $400 dollars in United States currency in HERRON's pocket.

29.   On February 8, 2023, after the **Subject Devices** were seized, I called the phone number 773-828-7040.  One of the two **Subject Devices**, specifically the light blue IPhone rang with government-issued cell phone number.

30.   Based on the information set forth above; the physical evidence seized (including 469.2 grams (with packing) of methamphetamine and what field tested positive as 122.2. grams (with packaging) of cocaine, the recorded jail calls in which HERRON is utilizing one of the **Subject Devices** to discuss narcotics trafficking,

and my knowledge, training and experience in drug trafficking investigations, I respectfully submit there is probable cause to believe additional evidence of drug trafficking will be found in electronic format on the **Subject Devices**.

31. In this case, the **Subject Devices**, a black Nokia cell phone was located on HERRON's person and a light blue IPhone were located in the vehicle and later identified as HERRON's. HERRON provided the passcode for the blue IPhone in order for law enforcement to provide phone numbers to HERRON that HERRON requested. In this case, search warrants are being requested on the **Subject Devices** belonging to HERRON. Based on the totality of the circumstances discussed above, and my training and experience, there is probable cause to believe that those **Subject Devices** will contain contact lists, telephone logs, photographs and other data that relate to drug trafficking and drug traffickers.

32. The **Subject Devices** are currently in storage at the DEA Grand Rapids District Office. The **Subject Devices** have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the **Subject Devices** were first seized on February 7, 2023.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

33. The warrant applied for would authorize the extraction and copying of electronically stored information, all under Rule 41(e)(2)(B).

34. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have

been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

*Forensic evidence.* As further described in Attachment B, this application seeks permission to locate forensic electronic evidence that establishes how the **Subject Devices** were used, the purpose of the use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the **Subject Devices** because data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

35. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

36. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **Subject Devices** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted

scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

## CONCLUSION

37. I respectfully submit that there is probable cause to believe that EUGENE HERRON and others unknown have engaged in the distribution of, and in the possession with intent to distribute crystal methamphetamine, and that they have conspired to do the same, in violation of 21 U.S.C §§ 841 and 846. I submit that this application supplies probable cause for a search warrant authorizing the examination of the **Subject Devices** described in Attachment A to seek the items described in Attachment B.

## REQUEST FOR SEALING

38. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the warrant is relevant to an ongoing investigation into criminal organizations and not all of the targets of this investigation are aware of this investigation. Based upon my training and experience, I have learned that persons engaged in criminal activity actively search for search warrants via the internet and disseminate them to other persons as they deem appropriate. Premature disclosure of the contents of this application and related documents may have a significant and

negative impact on the continuing investigation and may severely jeopardize its effectiveness.